UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Thomas Francis,

     Plaintiff,

     v.                                      Civil Action No. 2:10-CV-202

Michael J. Astrue,
Commissioner of Social Security,

     Defendant.

## **OPINION AND ORDER**
(Docs. 7, 13)

Claimant Thomas Francis brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and reversal of the decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits.  Pending before the Court are Francis's Motion seeking an order reversing the Commissioner's decision and remanding for further proceedings (Doc. 7), and the Commissioner's Motion seeking an order affirming the same (Doc. 13).

For the reasons set forth below, Francis's Motion to reverse and remand (Doc. 7) is GRANTED and the Commissioner's Motion to affirm (Doc. 13) is DENIED.  Pursuant to Local Rule 7(a)(6), and no party having made a written request for oral argument, I find that oral argument is not required.

## Background

Francis was 43 years old on the alleged disability onset date.  (Administrative Record ("AR") 22.)  He attended school through eighth grade (AR 41-42) and lives with his wife and two grown children (AR 37).  Francis applied for disability insurance benefits based upon lumbar and cervical spine impairments and depression.  (AR 182.)

Francis has worked in construction, carpentry, and as a laborer.  (AR 119, 153-60, 184.)  He has not worked since May 2007 due to back pain.  (AR 251.)  In an undated disability report, Francis reported that, due to back pain, he cannot stand for long periods of time, cannot bend, and that his back "always goes out."  (AR 118.)  A subsequent disability report stated that Francis "tries to have a companion with him if he has to walk outside [the] home as his back can go out & bring him to his knees."  (AR 167.)

In an April 2008 Function Report, Francis stated that his daily activities consist of watching television, playing chess, showering, and picking up his wife from work.  (AR 138.)  Francis further reported that his conditions interfere with sleeping, dressing, bathing, and using the toilet.  (AR 139.)  He is unable to do any meal preparation, household chores, or shopping due to pain.  (AR 140-41.)  Francis can drive a car and is able to go out alone.  (AR 141.)  Francis reported that he is able to visit with friends, play chess, fish, and hunt on a regular basis, but that he does not go out much for fear that his back will go out.  (AR 142-43.)

Francis further reported that his conditions affect his ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs.  (AR 143.)  On "a good day" he can walk "about a block."  (AR 143.)  Francis can pay attention without difficulty but does not read

or write well.  (AR 42, 143.)  At the time of his hearing before Administrative Law Judge

("ALJ") Edward Hoban, Francis reported taking Neurontin to help control his pain.  (AR

34.)

On March 20, 2008, Francis applied for a period of disability and disability

insurance benefits.  (AR 15.)  His application alleged that he became disabled on May 10,

2007 due to degenerative disc disease of the cervical and lumbar spine and depression.

(AR 17-18.)  Francis's application was denied initially and upon reconsideration and

Francis timely requested an administrative hearing, which occurred on February 24,

2010.  (AR 28-71, 74-76, 80-103.)  Francis and his wife testified at the hearing and

Francis was represented by an attorney.  (AR 30-54.)

On March 24, 2010, the ALJ found that Francis was not disabled within the

meaning of the Social Security Act and was therefore not entitled to benefits.  (AR 23.)

The Decision Review Board ("DRB") selected the ALJ's decision for review and

affirmed the decision, rendering the ALJ's decision the final decision of the

Commissioner.  (AR 1-3.)  Having exhausted his administrative remedies, Francis timely

filed the instant action on August 19, 2010.  (Doc. 1.)

## ALJ Determination

I.    **Five-Step Sequential Evaluation Process**

The Commissioner uses a five-step sequential process to evaluate disability

claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004).  The first step

requires the ALJ to determine whether the claimant is presently engaging in "substantial

3

gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so

engaged, step two requires the ALJ to determine whether the claimant has a "severe

impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant

has a severe impairment, the third step requires the ALJ to make a determination as to

whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R.

Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d).

The claimant is presumptively disabled if the impairment meets or equals a listed

impairment.  *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to

consider whether the claimant's "residual functional capacity" ("RFC") precludes the

performance of his or his past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The

fifth and final step requires the ALJ to determine whether the claimant can do "any other

work."  20 C.F.R. §§ 404.1520(g), 416.920(g).  The claimant bears the burden of proving

his or his case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a

"limited burden shift to the Commissioner" to "show that there is work in the national

economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009)

(clarifying that the burden shift to the Commissioner at step five is limited, and the

Commissioner "need not provide additional evidence of the claimant's residual functional

capacity").

## II.    ALJ's Written Decision

Employing this five-step analysis, ALJ Hoban first determined that Francis has not

engaged in substantial gainful activity since his alleged onset date of May 10, 2007.  (AR

17.)  At step two, the ALJ found that Francis has the severe impairment of degenerative

disc disease of the cervical and lumbar spine.  (AR 17-18); *see* 20 C.F.R. §§ 404.1520(c),

416.920(c).  At step three, the ALJ found that Francis does not have an impairment or

combination of impairments that meets or medically equals a listed impairment.  (AR

18.)  *See* 20 C.F.R. Part 404, Subpart P, Appx. 1.

Next, the ALJ determined that Francis has the RFC to perform sedentary work,[1]

except that he "should avoid tasks that require climbing ladders, ropes and scaffolds" and

that he "may occasionally perform tasks that require climbing ramps and stairs and tasks

that require stooping.  He may frequently perform tasks that require balancing, kneeling,

crouching and crawling."  (AR 18.)  The ALJ explained that while he "does not doubt

that the claimant may well experience pain and discomfort in his lower back, such is not

established, through substantial evidence, to be of disabling proportions" and that the

ALJ could not credit Francis's testimony regarding pain to the extent alleged.  (AR 22.)

In support of this credibility determination, the ALJ referenced the objective medical

evidence, the subjective factors including Francis's reported activities, and the opinion

evidence.  (AR 18-22.)  The ALJ also stated that the factors set forth in Social Security

Rulings (SSR) 96-7p, 96-4p, 96-2p, 96-5p, 96-6p, and 06-3p had been considered.  (AR

18.)

---

[1] Pursuant to 20 C.F.R. § 404.1567(a), "sedentary work" involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

The ALJ next determined at step four that Francis is unable to perform his past relevant work as a carpentry laborer.  (AR 22.)  At step five, the ALJ determined that considering Francis's age, education, work experience and RFC under the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, appendix 2, there are jobs that exist in significant numbers in the national economy that Francis can perform.  (AR 23.)

### Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard."  *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g).  A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision.  42 U.S.C. § 405(g); *Rivera v.*

*Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Poupore*, 566 F.3d at 305.

Although the reviewing court's role with respect to the Commissioner's disability decision is "quite limited[,] and substantial deference is to be afforded the Commissioner's decision," *Hernandez v. Barnhart*, No. 05 Civ. 9586, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007) (quotation marks and citation omitted), the Social Security Act "must be construed liberally because it is a remedial statute that is intended to include, rather than exclude, potential recipients of benefits," *Jones v. Apfel*, 66 F. Supp. 2d 518, 522 (S.D.N.Y. 1999); *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981) ("In its deliberations the District Court should consider the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied.").

## Analysis

Francis sets forth four arguments in support of his Motion to reverse and remand. First, he contends that the ALJ's decision includes several factual errors and misrepresents statements from Robert Penney, M.D., who has been Francis's primary care physician for more than fifteen years and is familiar with the extent of Francis's chronic back pain. (Doc. 7 at 17.) These errors, Francis contends, led to error in the ALJ's credibility determination. (Doc. 7 at 3.) Second, Francis argues that the ALJ erred by failing to include a sit/stand limitation in Francis's RFC. Third, he asserts that the ALJ erred by failing to address RFC limitations resulting from Francis's depression.

Finally, Francis contends that there is new evidence, submitted after the ALJ's decision, which requires a remand in this case.  The Commissioner asserts that the ALJ's decision applied the proper legal standards and is supported by substantial evidence.

**I.      The ALJ Misread Evidence from Dr. Penney, Leading to an Erroneous Credibility Determination.**

SSR 96-7p sets forth the evidence that the ALJ must consider in assessing the credibility of a claimant's statements about his or her symptoms.  SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996).  This ruling states:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.

*Id.*  The ruling further provides that the ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  *Id.* at *2.

Additionally, when determining a claimant's RFC, the ALJ is required to take into account the claimant's reports of pain and other limitations.  20 C.F.R. § 416.929; *see McLaughlin v. Sec'y of Health, Educ. & Welfare*, 612 F.2d 701, 704-05 (2d Cir. 1980).  But the ALJ is not required to accept the claimant's subjective complaints without question; in fact, the ALJ may exercise discretion in weighing the credibility of the

claimant's testimony in light of the other evidence in the record. *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

Moreover, the regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations. SSR 96-7p, at *2. At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. *Id.*; 20 C.F.R. § 404.1529(b). A claimant's subjective assertions of pain alone cannot ground a finding of disability. 20 C.F.R. § 404.1529(a); *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d. Cir. 1983) ("[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe . . . as to preclude any substantial gainful employment."). If the claimant does suffer from such an impairment, at the second step, the ALJ must consider "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of record. 20 C.F.R. § 404.1529(a). In general, "evidence" includes, among other things, "[s]tatements [the claimant] or others make about [his] impairment(s), [his] restrictions, [his] daily activities, [his] efforts to work, or any other relevant statements [he] make[s] to medical sources during the course of examination or treatment, or to [the agency] during interviews, on applications, in letters, and in testimony in . . . administrative proceedings." 20 C.F.R. § 404.1512(b)(3); *see also* 20 C.F.R. § 404.1529. It is the province of the Commissioner, not the reviewing court, to "appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984). If the Commissioner's findings are supported by substantial

evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints. *Id.* (citing *McLaughlin*, 612 F.2d at 704).

Here, the ALJ applied the two-step process for evaluating Francis's assertions of pain and other limitations in accordance with SSR 96-7p. (AR 18-22.)  First, the ALJ concluded that Francis's impairments could reasonably be expected to cause his alleged symptoms. (AR 19.)  At the second step, however, the ALJ concluded that Francis's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible. (AR 22.)  In support of this credibility determination, the ALJ referenced the objective medical evidence, the subjective factors including Francis's reported activities, and the opinion evidence. (AR 19-22.)  However, as the Commissioner concedes, some of the evidence discussed in the ALJ's credibility determination was inaccurately represented. (Doc. 7 at 15-17; Doc. 13 at 23.)

First, the ALJ erroneously stated that no treating physician documented Francis's dizziness. (AR 21.)  Dr. Penney's notes in fact reflect that Francis reported dizziness from his medications in August and October of 2009. (AR 305, 384.)  Second, the ALJ's statement that treating physicians were not aware that Francis must lie down to relieve pain is unsupported by the record. (AR 21.)  In September 2007, Francis reported to Dr. Penney that his pain was reduced by ice and lying down. (AR 248.)  Francis again reported to Dr. Penney in October 2008 that he was most comfortable lying on his back. (AR 309.)  Dr. Penney's treatment note from October 2009 states:  "He is not up doing much: lies around a lot." (AR 384.)

The ALJ's finding that Francis's reported limitations in rotating his neck were not documented in the record is also incorrect.  (AR 21.)  The record shows that Dr. Penney documented difficulty with neck rotation on at least two occasions.  (AR 305, 306.)

The ALJ's characterization of Francis's functioning in his activities of daily living is unsupported by substantial evidence.  Specifically, the ALJ found that Francis "needed some assistance dressing but otherwise . . . was independent in self-care tasks."  (AR 21.)  In support of this finding, the ALJ cited to Francis's function report.  The Court concludes, however, that the ALJ misinterpreted this report to such an extent that his decision "cannot be deemed to have complied with the requirement that [the claimant's function report] be taken into account."  *Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010); *see* SSR 96-7p, at *1.  Contrary to the ALJ's interpretation of the function report, it documents that Francis required significant assistance with self-care tasks, such as bathing and using the toilet and that Francis was unable to do any meal preparation, household chores, or shopping due to pain.  (AR 139-41.)

In discounting Francis's complaints of pain, the ALJ also found it significant that Francis reported having gone hunting and fishing.  (AR 21.)  However, a careful reading of the record shows that Francis reported having gone fishing successfully only one time in May 2009 "for a few hours" (AR 396) and his hunting was quite limited (AR 142 ("I can't walk in the woods.")).  Dr. Penney's notes reflect that in May 2008, Francis reported that he tried to go fishing twice but "had to quit."  (AR 296.)  While the ALJ found that Francis "went hunting three times for approximately four hours each time," Francis testified at the hearing that the trips were for approximately two to four hours; he

11

was always accompanied by someone; he required help carrying his rifle; and there were occasions in which he had to use his rifle as a crutch to get himself out of the woods or where he "laid . . . on the ground because [he] couldn't even move."  (AR 36, 46.)  "[A] claimant need not be an invalid to be disabled."  *Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988).  The ALJ erroneously relied upon evidence of Francis's limited hunting and fishing, during which he received significant assistance from others, in discounting Francis's complaints of pain.

The ALJ also found that Francis "was considering a return to his former strenuous work in carpentry."  (AR 21.)  Again, a careful reading of the record reveals that this characterization is not entirely accurate.  The ALJ apparently gleaned this finding from a December 2009 treatment note from Dr. Penney.  The note states:  "[Francis] is not sure if he should try going back to work (construction)."  (AR 393.)  The ALJ's interpretation of this evidence is unfairly prejudicial to Francis, and he should not be penalized for expressing a desire to attempt to return to work.  Such a statement by Francis does not necessarily indicate that he was actually capable of returning to carpentry work.  Significantly, the ALJ failed to note that in response to Francis's expressed uncertainty regarding a return to work, Dr. Penney opined:  "I don't think returning to a physically demanding job would be wise."  (AR 394.)

The Court also notes that the ALJ's statement in support of his credibility determination that "none of [Francis's] physicians have described him as disabled" was improper.  (AR 22.)  An opinion that Francis is "disabled" would be an administrative finding dispositive to his case, only to be decided by the Commissioner.  SSR 96-5p,

1996 WL 374183, at *2 (S.S.A. July 2, 1996); 20 C.F.R. §§ 404.1527(e), 416.927(e).

Although the ALJ "must always carefully consider medical source opinions about any

issue," including opinions about issues that are reserved to the Commissioner, "treating

source opinions on issues reserved to the Commissioner are never entitled to controlling

weight or special significance." *Id.*

      As set forth above, a significant portion of the ALJ's credibility analysis is based

on an inaccurate reading of the record.  As a result, the Court finds that the ALJ's

credibility determination is unsupported by substantial evidence.  *See Horan v. Astrue*,

350 F. App'x 483, 485 (2d Cir. 2009) (finding error in ALJ's credibility determination

where it was "based largely on . . . factual errors").  In concluding that the ALJ erred in

his credibility assessment, the Court also finds it significant that Francis has a strong

work history, having worked consistently in construction and carpentry nearly all of his

adult life.  (AR 114, 119, 153-60.)  This factor should have been considered in assessing

Francis's credibility in this case.  *Carvey v. Astrue*, 380 F. App'x 50, 53 (2d Cir. 2010)

("To be sure, a good work history may be deemed probative of credibility." (quotation

omitted)).  Upon remand, the ALJ shall determine what effect, if any, the Court's

conclusions have upon Francis's RFC or whether the Court's conclusions must result in a

finding of disability.  The Court will address Francis's remaining arguments to the extent

they may affect the administrative process on remand.

## II.     The ALJ's Failure to Include a Sit/Stand Limitation is Supported by Substantial Evidence.

Francis argues that "[o]ne of the primary weaknesses of the ALJ decision is that the RFC assessment did not address [Francis's] need to have a sit/stand option."  (Doc. 7 at 12.)  As a result, he contends, the RFC is unsupported by substantial evidence.  (*Id.*)  In support of his argument, Francis points to SSR 96-9p, which provides, in relevant part, that:

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically.  Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded.  The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand.

SSR 96-9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996); *see also* SSR 83-12, 1983 WL 31253, at *4 (S.S.A. 1983) (addressing "alternate sitting and standing").

Although the record contains evidence that Francis has been observed to be uncomfortable in both sitting and standing positions (AR 238, 240, 251, 374), there is no indication in the record that a sit/stand option would make Francis more comfortable, much less be required.  Nothing in Francis's own reports and testimony, treating physicians' notes or physical therapy notes document that changing from sitting to standing would provide Francis any relief.  To the contrary, the record contains physicians' notes documenting that Francis encounters difficulty and discomfort with changes in position.  (AR 240 ("has great difficulty arising from sitting to standing"); 251 (noting Francis's "obvious discomfort changing position").)   Moreover, the RFC as

14

written without a sit/stand option is supported by Dr. Penney's note from September 2008

that Francis can sit for three to four hours without much pain.  (AR 308.)  Three to four

hours is consistent with the requirements of sedentary work.  *See* SSR 96-9p, at *6

(noting that sedentary work requires sitting for "approximately 2-hour intervals" between

breaks).  Finally, Dr. Penney's observations and the ALJ's conclusion are supported by

the opinion of state agency consultant Leslie Abramson, M.D., who opined that Francis

could "sit (with normal breaks) for a total of about 6 hours in an 8-hour workday."  (AR

298); *see Santos-Sanchez v. Astrue*, 723 F. Supp. 2d 630, 638 (S.D.N.Y. 2010) (finding

no error in ALJ's reliance upon state agency consultant's opinion); *Babcock v. Barnhart*,

412 F. Supp. 2d 274, 280 (W.D.N.Y. 2006) ("State agency physicians are qualified as

experts in the evaluation of medical issues in disability claims.  As such their opinions

may constitute substantial evidence if they are consistent with the record as a whole."

(quotation omitted)).  Accordingly, Francis has failed to establish that the ALJ erred by

not including a sit/stand option in the RFC.

## III.   The RFC Need Not Reflect Additional Mental Health Limitations.

Next, Francis argues that the ALJ erred by failing to address the opinion of

Thomas Reilly, Ph.D, the state agency consultant, that Francis's depression would limit

him to performing 1-2 step tasks in a low stress environment.  (AR 325; Doc. 7 at 19-20.)

He further asserts that, considering these additional nonexertional limitations, the ALJ's

reliance upon the Medical-Vocational Guidelines ("the grids") to determine RFC was

improper, and vocational expert ("VE") testimony was required.  (Doc. 7 at 20); *see Rosa*

*v. Callahan*, 168 F.3d 72, 77-78 (2d Cir. 1999).  The Commissioner concedes that the

ALJ should have addressed Dr. Reilly's assessments, but asserts that any error was harmless.  (Doc. 13 at 18.)

In determining RFC, the ALJ must consider limitations caused by "medically determinable impairments that are not severe."  20 C.F.R. § 404.1545(a).  In this case, the ALJ considered evidence of Francis's depression and concluded at step two of the sequential evaluation process that it was not severe.  Specifically, the ALJ found that

> The medical evidence shows a situational depression.  Medication was prescribed and improvement was shown.  [Francis] receives no ongoing psychiatric therapy.  The record establishes that there have been no limitations in his activities of daily living attributable to a mental impairment, no limitations in social functioning, no deficiencies of concentration persistence or pace due to a mental impairment and no episodes of decompensation.  Thus, the claimant's depression is not a "severe" impairment.

(AR 18.)  Dr. Reilly's assessment did not differ significantly from the ALJ's conclusions. Like the ALJ, Dr. Reilly used the term "situational" to describe Francis's depression. (AR 325.)  At the time of Dr. Reilly's assessment, dated October 14, 2008, Francis had not yet been prescribed medication for his depression, so Dr. Reilly's notes stated that Francis was "not currently on any psych medication, although may have some mood elevation/benefit w/ neurontin."  (*Id.*)  With respect to activities of daily living, Dr. Reilly stated that, per Francis's own reports, Francis had no "alleged or apparent reduction in functional capacities due to psych."  (*Id.*)  Regarding social functioning, Dr. Reilly further concluded that Francis "does not allege nor present w/ grossly disordered social behavior."  (*Id.*)

The ALJ's conclusions depart from Dr. Reilly's assessment in one primary way. While the ALJ concluded Francis had no deficiencies of concentration, persistence, or pace, due to a mental impairment, Dr. Reilly stated "CPP is intact per [medical source] Report from treating [primary care physician] for simple 1-2 step task demands in low stress contexts."  (*Id.*)  Consequently, it appears that the ALJ implicitly rejected the part of Dr. Reilly's conclusion regarding Francis's mental limitations arising from concentration, persistence or pace.  The ALJ's implicit rejection of this conclusion, contrary to Francis's argument, does not necessarily equate to error.  *See Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) (noting that, although the court would remand where it was "unable to fathom the ALJ's rationale in relation to evidence in the record," it would not remand where the court was "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that [the ALJ's] determination was supported by substantial evidence"); *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (D. Vt. 1983).

In this case, the ALJ's implied rejection of Dr. Reilly's limitation of 1-2 step task demands in low stress contexts is supported by substantial evidence which can be easily gleaned from the record and the ALJ's reasoning.  *See Mongeur*, 722 F.2d at 1040.  The record contains almost no evidence that Francis had any functional limitations arising out of depression.  Francis's disability report did not list depression as a condition that limited his ability to work, nor did he list any limitations arising out of depression in a subsequent disability report.  (AR 118, 176-81.)  Francis's function report did not document any limitation that he attributed to any mental impairment.  (AR 138-45.)

17

Francis reported that he can follow spoken instructions "pretty good."  (AR 143.)
Although Francis reported difficulty reading, he testified that he believed this was a result
of his poor educational background.  (AR 41-42.)

Medical evidence also supports the ALJ's conclusions regarding Francis's RFC.
A Mental Status Report completed by Dr. Penney in September 2008 (AR 312) noted that
Francis exhibited a full, appropriate affect, full orientation, adequate attention and
concentration, "grossly normal" memory, and a good "ability to relate."  Although at
least one office visit with Dr. Penney noted "depression" as a problem, many office notes
listed only back pain, and did not discuss any mental health concerns.  (*See, e.g.*, AR 361,
364, 366, 368-85.)  Accordingly, the ALJ's failure to address Dr. Reilly's opinion
constitutes harmless error.  In addition, because the record does not support that Francis's
exertional limitations are compounded by significant nonexertional limitations, as laid
out above, the ALJ's reliance upon the grids to determine Francis's RFC was proper and
no VE testimony was required.  *Rosa*, 168 F.3d at 77-78, 81.

## IV.   Dr. Penney's Letter is Neither New Evidence nor Material.

Finally, Francis argues that he "has obtained new and material evidence from Dr.
Penney that greatly undermines the ALJ's decision."  (Doc. 7 at 21.)  This "new"
evidence consists of a letter from Dr. Penney, dated August 17, 2010, which states that
Francis:

> has a history of recurrent low back pain beginning 15 or more years ago.  It
> has been more persistent these past few years.  As is the case with most
> such patients, a specific underlying cause of the back problem cannot be
> determined with certainty.  All of the usual conservative treatment
> modalities including medications, physical therapy, injection therapies, etc.

> have provided limited or no relief.  Specific functional limitations and
> capabilities cannot be stated without a formal evaluation structured to make
> these determinations.  However, based upon his long history, symptoms,
> and evaluations thus far, I feel that his contention that he is unable to
> perform any sustained productive work is credible.  Prolonged sitting
> standing, or any sort of repetitive or heavy lifting, . . . is likely to exacerbate
> his symptoms.

(Doc. 7-1.)  Francis contends that this letter "rejects" the ALJ's conclusions about "the

severity of [Francis's] symptoms and his credibility" and that because the Disability

Service Improvement Initiative ("DSI") rules would prevent Francis from filing a new

application and re-opening his current claim, remand is required.  (Doc. 7 at 21.)  The

Commissioner contends that no remand is required because the evidence is not material.

(Doc. 13 at 24.)

Sentence six of 42 U.S.C § 405(g) sets forth the scope of judicial review of the

Commissioner's decision and states that:  "[t]he court may . . . at any time order

additional evidence to be taken before the Commissioner . . . but only upon a showing

that there is new evidence which is material and that there is good cause for the failure to

incorporate such evidence into the record in a prior proceeding."  42 U.S.C § 405(g).

"[N]ew evidence" is "that evidence which has not been considered previously during the

administrative process."  *DelValle v. Apfel*, 97 F. Supp. 2d 215, 222 (D. Conn. 1999).

New evidence is "material" if (1) it is relevant to the claimant's condition during the time

period for which benefits were denied; (2) it is probative; and (3) there is a reasonable

possibility that the new evidence would have influenced the Commissioner to decide the

claimant's application differently.  *Williams v. Comm'r of Soc. Sec.*, 236 F. App'x 641,

644 (2d Cir. 2007); *see Bennett v. Astrue*, No. 07-CV-780(NAM), 2010 WL 3909530, at

*10 (N.D.N.Y. Sept. 30, 2010) ("A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level."); *Titus ex. Re. N.M.C. v. Astrue*, No. 09-CV-93(GTS/VEB), 2010 WL 3323738, at *4-6 (N.D.N.Y. July 6, 2010) (discussing circumstances under which sentence six and sentence four remand may be appropriate).

Here, Francis has not met his burden of showing that Dr. Penney's letter is new or material. Dr. Penney's letter does not set forth any evidence pertaining to Francis's condition that is not already part of the record. Instead, it offers a summary of evidence already submitted in the form of Dr. Penney's treatment notes and other medical evidence. Specifically, the record already documents Francis's long history of back pain, increasing persistence of pain, and lack of certainty regarding its underlying cause. (AR 238-41, 245, 248, 256, 261.) There is also already evidence in the record that sitting, standing, and lifting causes Francis pain. (AR 240, 248, 361.) The record is replete with evidence documenting treatment modalities referenced in the letter, including medications, physical therapy, injection therapies and the extent of relief that these treatments provided to Francis. (AR 185-211, 264-65, 361-81, 386-94.) Dr. Penney has already stated in prior treatment notes that he declines to make any statement about Francis's functional limitations without a formal evaluation. (AR 362-63.) Finally, Dr. Penney's belief that Francis is credible and Dr. Penney's concerns regarding Francis's ability to perform sustained productive work are also fairly represented in the record through treatment notes of Dr. Penney and other providers. (AR 185, 240, 308, 394.)

Based upon the above, the Court concludes that Dr. Penney's letter is neither new evidence nor material. The letter simply repeats and summarizes evidence already in the record. There is no reasonable probability that the letter would have influenced the Commissioner to decide the claimant's application differently. Lastly, in light of the grant of Francis's motion to remand, the Court need not address Francis's contention that the DSI rules would unfairly prevent him from re-filing his claim or re-opening his case.

## Conclusion

For the reasons stated above, Francis's Motion (Doc. 7) is GRANTED and the Commissioner's Motion (Doc. 13) is DENIED. The decision of the Commissioner is hereby REVERSED and this matter is REMANDED to the Social Security Administration pursuant to 42 U.S.C. 405(g) for further proceedings consistent with this Order.

Dated at Burlington, in the District of Vermont, this 5th day of July, 2011.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge